UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **TIERNEY CULVER, individually and on behalf of all others similarly situated,** | ) ) ) |
| **Plaintiff,** | ) ) ) |
| v. | ) ) Case No. 24-CV-0078-CVE-MTS ) |
| **SAINT FRANCIS HEALTH SYSTEM, INC.,** | ) ) ) |
| **Defendant.** | ) |

**OPINION AND ORDER**

Before the Court is plaintiff's motion for leave to amend her complaint (Dkt. # 377), defendant's response in opposition (Dkt. # 380), and plaintiff's reply (Dkt. # 382). Plaintiff Tierney Culver, individually and on behalf of all others similarly situated, brings this putative collective action against defendant St. Francis Health System, Inc., under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., for unpaid overtime wages, and a putative class action under Oklahoma law and Federal Rule of Civil Procedure 23, for unpaid wages. For the reasons set forth below, plaintiff's motion to amend is granted.

**I.**

In February 2024, plaintiff filed a complaint with the Court on behalf of herself and all others similarly situated. Dkt. # 2. Defendant answered (Dkt. # 72), and plaintiff moved for conditional certification of a collective action under the FLSA (Dkt. # 105), which the Court granted in part (Dkt. # 121). The Court then entered a preliminary scheduling order on July 25, 2024. Dkt. # 122. Therein, the Court established a December 13, 2024 deadline for "motions for joinder of additional parties &/or amendment to complaint." Id. at 1 (capitalization altered). The notice period for plaintiffs to opt-in to the litigation ended on November 20, 2024, at which time there were 1,317

opt-in plaintiffs. Dkt. # 377, at 2. The parties proceeded to engage in discovery; however, prior to the end of discovery and before final certification of the collective or class certification, plaintiff filed the instant motion seeking to amend her complaint. Id. at 10-11.

Plaintiff proposes two broad changes to her complaint. First, her proposed amended complaint narrows both her claims and the overall number of plaintiffs, and second, it "include[s] a new collective/class representative with standing to bring the narrowed claims on a representative basis." Id. at 5. During discovery, plaintiff learned that the policy at issue "negatively affected certain groups of employees more than others," namely affecting "patient-facing non-clinical workers." Id. Plaintiff states that she learned this from her expert's analysis following initial document production, during which defendant produced one hundred and fifty-five spreadsheets of data for "thousands" of putative class members and plaintiff in turn provided to her expert for review and analysis. Id. at 2. It was then that plaintiff's expert "uncovered" a discrepancy in the policy's effect on different job types, precipitating this motion. Id. at 5. In the course of briefing her motion, plaintiff filed a notice of withdrawal of 1,142 opt-in plaintiffs' claims, reducing the conditionally certified collective from 1,317 opt-in plaintiffs to 177. Dkt. # 381. Plaintiff further proposes substituting the named plaintiff in this action, Tierney Culver, with plaintiff Corrine Robertson, as Culver's claims are no longer within the scope of the conditionally certified collective or proposed class. Dkt. # 377, at 8.

Defendant filed a response in opposition to plaintiff's motion for leave to amend, arguing that the change in class "dramatically alters" both the collective that the Court conditionally certified without making the requisite showing required for conditional certification. Dkt. # 380, at 7. Defendant also argues that Robertson is "not similarly situated" to Culver. Id. Defendant alleges

that it would be prejudiced because the deadline for amending pleadings, December 13, 2024, has long passed, and the parties have already "actively litigated" the action as originally pleaded, including discovery of plaintiffs who seek to withdraw from the conditionally certified collective and putative class. Id. at 8. In sum, defendant argues that plaintiff "has not shown good cause for making such an amendment so long after the expiration of the deadline for amending pleadings, and because the proposed amendments would prejudice" defendant. Id.

Plaintiff replied, emphasizing that the proposed amendments would alter the conditionally certified collective, but "the difference does not bring in different individuals or different claims." Dkt. # 382, at 2. Nor does the narrowed scope of her claims prejudice defendant, as "[n]either party has moved beyond written discovery." Id. at 6. Plaintiff replied that the motion was not brought in bad faith and underscored that she did not delay in bringing this motion. Id. at 4. The motion is now ripe for review.

## II.

Under Federal Rule of Civil Procedure 15(a)(2), a party may amend its pleading "only with the opposing party's written permission or the court's leave." The rule specifically instructs that the "court should freely give leave when justice so requires." Id. Refusal to grant leave to amend is justified upon a showing of "undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." Bylin v. Billings, 568 F.3d 1224, 1229 (10th Cir. 2009) (quoting Frank v. U.S. W., Inc., 3 F.3d 1357, 1365 (10th Cir. 1993)). However, the liberal approach to granting leave contemplated by Rule 15 seeks to "provide maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities." BLOM Bank SAL v. Honickman, 145 S. Ct. 1612, 1621 (2025) (quoting

6 WRIGHT, MILLER & KANE, FEDERAL PRACTICE & PROCEDURE § 1471 (3d ed. 2010)).

Additionally, under Federal Rule of Civil Procedure 16(b)(4), a court may modify its scheduling order "only for good cause and with the judge's consent." This standard effectively "requires the movant to show that scheduling deadlines cannot be met despite the movant's diligent efforts." Tesone v. Empire Mktg. Strategies, 942 F.3d 979, 988 (10th Cir. 2019) (quoting Gorsuch, Ltd., B.C. v. Wells Fargo Nat. Bank Ass'n, 771 F.3d 1230, 1240 (10th Cir. 2014)). The rule affords courts "considerable discretion in determining what kind of showing satisfies this . . . good cause standard." Id. (quoting 3 MOORE'S FEDERAL PRACTICE § 16.14(1)(b) (3d ed. 2019)). Rule 15 intersects with Rule 16's "good cause" standard when a scheduling order contains a deadline for filing a motion for leave to amend a complaint. In those circumstances, like the ones presented here, the party seeking leave to amend "must demonstrate (1) good cause for seeking modification under Fed. R. Civ. P. 16(b)(4)[,] and (2) satisfaction of the Rule 15(a) standard." Gorsuch, 771 F.3d at 1240. Ultimately, the Court has "broad discretion in managing the pretrial schedule." See Rimbert v. Eli Lilly & Co., 647 F.3d 1247, 1254 (10th Cir. 2011).

Here, plaintiff has both met the Rule 16(b)(4) "good cause" standard and made the requisite showing under the Rule 15(a) to merit leave to amend. Turning first to the more stringent "good cause" standard of Rule 16(b)(4), plaintiff has sufficiently shown that, based on the sequence of events, she could not have met the Court's initial December 2024 deadline for amending her complaint despite diligent efforts. Plaintiff states that she first "uncovered" the discrepancy in application of the policy at issue following initial document production, which occurred in December 2024, and which she in turn provided to her expert for analysis. Dkt. # 377, at 5, 2. It was only after that expert conducted a "detailed analysis" of the voluminous data and promptly raised the

4

discrepancy in February 2025 that plaintiff discovered the discrepancy, pursuing further analysis to confirm the issue as of May 2025. Dkt. # 377-2, ¶ 6. Plaintiff states that between May and August 2025, she was actively contacting the plaintiffs concerned here, confirming the new data analysis. Id. ¶ 7. Plaintiff states that in August she contacted defense counsel to come to an agreement regarding amendment, but once she determined that they were unable to do so, she moved the Court for leave to amend. Id. ¶ 8.

Defendant responds that prior to expert analysis of the data provided during discovery, plaintiff could have discerned the pattern of disparate application of the policy, as she could have contacted the plaintiffs directly. Dkt. # 380, at 18. Yet, defendant's argument is unavailing. Perhaps with the benefit of hindsight, plaintiff may have discovered this discrepancy more directly or rapidly, but that is not the standard at issue here; the standard is not perfection but rather diligence. Tesone, 942 F.3d at 988. Rule 16(b)(4)'s "good cause" standard exists in part to account for unforeseeable events, such as—in the Tenth Circuit's own words—"if a plaintiff learns new information through discovery." Gorsuch, 771 F.3d at 1240. Plaintiff has adequately explained the delay at issue here and made a showing that she could not have met the Court's deadline despite her diligent effort. See Husky Ventures, Inc. v. B55 Invs., Ltd., 911 F.3d 1000, 1020 (10th Cir. 2018). Thus, plaintiff meets the Rule 16(b)(4) "good cause" standard.

Turning next to Rule 15(a)(2), defendant has not shown that it is unduly prejudiced, that amendment would cause undue delay, that plaintiff's motion was made in bad faith, or that amendment is futile. Bylin, 568 F.3d at 1229. With regard to prejudice, "[p]erhaps the most important factor" for a court to consider (Mintner v. Prime Equipment Co., 451 F.3d 1196, 1208 (10th Cir. 2006) (quoting 6 WRIGHT, MILLER & KANE, FEDERAL PRACTICE & PROCEDURE § 1487

(2d ed. 1990))), defendant has "not requested, noticed, or taken any depositions in this matter," such that reducing the number of plaintiffs and scope of claims would not prejudice defendant (Dkt. # 377-2, ¶ 9). Defendant asserts that with plaintiff's proposed amendments, it is "being forced . . . to start all over again with a new collective," but this is not the case. Dkt. # 380, at 20. Plaintiff underscores that despite the proposed change in collective and class size, all remaining opt-in plaintiffs have provided written discovery responses, and neither party has moved beyond written discovery. Dkt. # 382, at 6. Defendant responds that it has "analyzed the data based on the allegations in the Complaint," which "required [it] to expend significant time and resources"; yet, defendant's continued expenditure on discovery for a larger collective with more plaintiffs and more claims than is necessary would merely compound any loss in resources. Dkt. # 380, at 20. And although plaintiff moved for amendment "close to the close of discovery" (id.), discovery remains open and, from what the parties' briefing reveals, in its preliminary stages (Dkt. # 382, at 6).

Other courts presented with similar motions to amend complaints by conditionally certified FLSA collectives have found that dismissing "the non-conforming opt-in plaintiffs' claims without prejudice and narrow[ing] the scope of the FLSA collective action" meets the Rule 15(a)(2) standard and serves the interests of justice. Pruess v. Presbyterian Health Plan, Inc., 745 F. Supp. 3d 1218, 1247 (D.N.M. 2024) (quoting Hill v. R+L Carriers, Inc., No. 09-CV-1907, 2011 WL 830546, at *4 (N.D. Cal. Mar. 3, 2011)) (collecting cases). In managing FLSA collective certifications and actions, district courts enjoy discretion. See Thiessen v. Gen. Elec. Cap. Corp., 267 F.3d 1094, 1105 (10th Cir. 2001). As it stands, defendant has not shown that it is unduly prejudiced by the proposed amended complaint, as the narrowed scope of claims and reduced number of plaintiffs does not "fundamentally change[] the nature of this action." Dkt. # 280, at 23.

With regard to the change of named plaintiff, "[c]ourts in the Tenth Circuit have . . . taken a rather liberal approach in permitting the substitution of class representatives at various stages in the proceedings." In re Motor Fuel Temperature Sales Prac. Litig., No. 07-MD-1840, 2009 WL 3122501, at *2 n.17 (D. Kan. Sep. 24, 2009) in that it reduces the prospect of redundant or piecemeal litigation (Dkt. # 377, at 7), and affords a plaintiff the "maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities" (BLOM Bank, 145 S. Ct. at 1621 (quoting 6 WRIGHT, MILLER & KANE, FEDERAL PRACTICE & PROCEDURE § 1471 (3d ed. 2010))).

At bottom, granting plaintiff's motion to amend serves the interests of justice in that it promotes judicial economy. Plaintiff's amended complaint limits the scope of her claims and meets both the Rule 16(b)(4) "good cause" standard based on the timeliness of the motion and the more liberal Rule 15(a)(2) standard given that "justice so requires" amendment. The change to the named plaintiff similarly poses no undue prejudice to defendant and serves the interest of judicial economy.

**IT IS THEREFORE ORDERED** that plaintiff's motion for leave to amend her complaint (Dkt. # 377) is **granted**. Plaintiff shall file her first amended complaint as a separate docket entry no later than **October 17, 2025**.

**DATED** this 8th day of October, 2025.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE